**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **BRAD ORTEGO** | **CASE NO. 2:23-CV-01334 LEAD** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LYONDELLBASELL INC ET AL** | **MAG. JUDGE THOMAS LEBLANC** |

**CONSOLIDATED WITH**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **DUSTY KING** | **CASE NO. 2:23-CV-01335 (Member)** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LYONDELLBASELL INC ET AL** | **MAG. JUDGE THOMAS LEBLANC** |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **MICHAEL HUBER** | **CASE NO. 2:23-CV-01336 (Member)** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **LYONDELLBASELL INC ET AL** | **MAG. JUDGE THOMAS LEBLANC** |

**<u>MEMORANDUM RULING</u>**

Before the Court is "Defendant's Rule 12(b)(6) Motion to Dismiss" (Doc. 44) wherein Defendant Equistar Chemicals, LP ("Equistar")[1] moves to dismiss with prejudice the claims of Plaintiffs, Brad Ortego, Dusty King, and Michael Huber for failure to plead sufficient facts to state a viable claim for relief.

## BACKGROUND

The instant action involves whistleblower claims under Louisiana Revised Statute 23:967 wherein Plaintiffs allege that their previous employer, Equistar, made defamatory comments about them after they were terminated for violating company policy.[2] Plaintiffs allege that on or about June 13, 2022, they were wrongfully terminated by Defendant in retaliation for reporting illegal and fraudulent conduct committed by supervisors, managers and coworkers within the organization.[3]

Plaintiffs complain that Equistar terminated their employment in retaliation for exposing illegal and fraudulent activity that included a pattern of favoritism and policy violations in the assignment of overtime hours.[4] Plaintiffs allege that the LDPE and LLDPE units, were consistently assigned overtime hours to favor certain employees in those units over other eligible employees, including the OU&I group where Plaintiffs worked. Plaintiff assert that such conduct violates Equistar's Overtime Policy that requires fair rotation of overtime hours.[5]

---

[1] Previously referred to and known as LyonDellBasell, Inc.
[2] Second Amended Complaint, Docs. 41, 42, 43.
[3] *Id.*, ¶ 2.
[4] *Id.* ¶ 2.
[5] Doc. 41, ¶ 3.

After discovering the overtime manipulation in early 2022, Plaintiff Ortego reported the discrepancies to his direct supervisor, Nick Schmitz.  Plaintiffs, Ortego, King and Huber in a concerted effort, sent a formal email to Maintenance Manager, Mark Mitchell, requesting a formal meeting.  Plaintiffs met with Mitchell and discussed the overtime manipulation, after which, Plaintiff assert the management's attitude tow them noticeably changed, and the supervisors began to engage in retaliator conduct against them.

Ortego asserts that after meeting with Mitchell, he was investigated by the HR Department for "misuse of company time" by sleeping during an overnight shift. Ortego claims that his step-up supervisor, Chris Holley, authorized brief rest periods on company issued mattresses as long as calls were not missed.

Huber complains that in February 2022, he answered a call out to OU&I, and upon contacting the DCS technician, for information, he was informed the technician would not be available until late that evening.  Huber informed his on-call supervisors, who then released him for the day.  Plaintiff, Huber, was then accused of leaving a job incomplete. Huber complains that this was a false accusation.

Huber asserts that around this time he requested a transfer from day to night shifts. During one overnight shift, Huber briefly rested on a cot provided by Equistar; he also suggests that this was a common and accepted practice during overnight shifts, so long as calls were not missed. On June 9, 2022, Huber was interrogated about the incident and threatened with termination. Huber explained that he had merely followed the customary practice. Huber asserts that Holley later admitted that he allowed employees to nap during night shifts.

King alleges that after the meeting with Mitchell, Andy Lanier and others accused him of "making a disruption" and interfering with leadership.  King alleges that he applied for a supervisor position, but that Lanier openly told others that he would never allow King to become a supervisor, blaming him for the overtime complaint. King also complains that he was socially alienated in the shared breakroom, excluded from opportunities, and targeted for increased scrutiny.

In the spring of 2022, King was assigned night shift duties as a Safety Step-up Supervisor.  He also used a company-issued air mattress to rest at his workstation during inactive periods, which he alleges was a common and permitted practice. However, King alleges that on June 9, 2022, he was interrogated regarding him sleeping during the time he was working on the night shift.  Holly confirmed that he authorized the rest periods, so long as no calls were missed.

Subsequently Plaintiffs Ortego, Huber, and King were terminated for violating company policy; Holley received a written reprimand.[6]

After their termination, Plaintiffs complain that Equistar made defamatory communications about them that caused them reputational harm and economic losses.

After being terminated at Equistar, Ortego was employed by Excel.  Ortego alleges that Equistar or its agents made false and defamatory communications with Excel regarding his termination for misconduct, including sleeping on the job and misuse of company time, which caused him reputational harm and the loss of a higher-paying position.

---

[6] Aaron King was alleged to have also used an air mattress to rest, but was never reprimanded.

Huber alleges that Equistar made false and malicious statements to his subsequent employer that were inflammatory and made with actual malice or a reckless disregard for the truth. Huber does not allege what these statements were that he claims were inflammatory. Huber complains that their statements harmed his reputation and forced him to accept employment at a lower wage and in another city away from his family and residence.

King alleges that after his termination, he was hired by Excel who contracted with Sasol. While working in the control room, Andy Lanier and Brad Ortego observed him. He was immediately banned from that location and his supervisor at Sasol informed him that Human Resources at Equistar had interfered. King makes the inference that because Ortego was terminated at the same time as him, and not banned from the control room, then his claim that defamatory statements were made must have been directly targeted toward him. Additionally, King asserts that he was informed by his Sasol superintendent that someone in management at Equistar was angry, and that "you [King] must has really pissed someone off." King complains that he had applied for a permanent position with Sasol and believes the defamation cost him that opportunity. He also complains that the defamatory comments deprived him of an employment opportunity with Westlake Chemical Corporation.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as

matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Each Plaintiff asserts a claim under the Louisiana Revised Statute article 23:967(A) ("LWA") and defamation under Louisiana Civil Code article 2315. Plaintiffs are asserting a retaliation claim pursuant to Louisiana Revised Statute 23:967 for being terminated in response to reports of fraudulent overtime practices, favoritism, and policy violations. Plaintiffs also assert claims for defamation under Louisiana Civil Code article 2315 based on false statements made by Equistar that were made with malice or reckless disregard for the truth that caused reputational and economic harm to each Plaintiff.

*Retaliation*

The LWA provides in pertinent part that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law,

discloses or threatens to disclose a workplace act or practice that is in violation of state law."

To state a claim for relief under the LWA, a plaintiff must establish in the complaint that (1) the defendant violated state law through a prohibited workplace act or practice; (2) he advised the defendant of the violation of law; (3) he engaged in protected activity, *i.e.* disclosed, threatened to disclose, or objects to or refuses to participate in the employment act or practice that violates state law; and (4) he was fired as a result of his objection to, refusal to participate in the unlawful practice or threat to disclose the practice. *Lehman v. D'Albor*, 2016 WL 6465376, at *2 (W.D. La. Oct. 27, 2016); *Lee v. Hood Container of Louisiana, LLC*, 2023 WL 7345945, at *2 (M.D. La. Nov. 7, 2023); *Lightell v. Walker*, 527 F. Supp. 3d 866, 891 (E.D. La. 2021) (citing *Hale v. Touro Infirmary*, 886 So.2d 1210, 1215 (La. App. 4 Cir. 11/3/04)).

The Louisiana "Whistleblower statute is not triggered without a violate of state law. *Broussard v. Lafayette City-Par. Consol. Gov't*, 45 F. Supp. 3d 553, 581 (W.D. La. 2014) ("For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual violation of state law.").

Defendant argues that Plaintiffs have failed to allege that Defendant violated a state law, rather Plaintiffs claim that Defendant violated its own overtime policy. Defendant remarks that there is no law that regulates or mandates the issuance of overtime. Plaintiffs argue, pursuant to Louisiana Civil Code Article 1953,[7] that the state law that Defendant

---

[7] This Civil Code article provides the definition of fraud.

violated was the fraudulent manipulation of overtime hours, which it posits is unlawful conduct.

Defendants contend that Plaintiffs did not allege in their Amended Complaint that managers deliberately misrepresented and concealed overtime opportunities to benefit favored employees.[8] Defendants objects to Plaintiffs' introduction of the same and attempt to expand the pleadings.

The Court finds that Plaintiffs' theory that Equistar violated a state law through fraud is without merit. Failing to adhere to a company's policy as to the allocation of potential overtime hours is not fraud and is not a violation of state law.  It is simply a violation of the company's own policies. Plaintiff have not established a violation of state law and thus have failed to meet the first element of their claim. Furthermore, Louisiana Civil Code article 1953 does not form the basis of an LWA claim.

*Defamation*

Defendant argues that Plaintiffs have failed to plausibly allege their defamation claims.

Defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Costello v. hardy*, 864 So.2d 129 (La. 1/21/04). Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence

---

[8] See Doc. 49, p. 10.

or greater) on the part of the publisher; and (4) resulting injury. *Id.* The fault requirement is generally referred to as malice, actual or implied. *Id.* at 139.

A statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person, or otherwise expose the person to contempt or ridicule. *Id.* at 140. In Louisiana, defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. *Id.* When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. *Id.* When the words at issue are not defamatory per se, a plaintiff must prove, in addition to a defamatory meaning and publication, falsity, malice (or fault) and injury. *Id.* "The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense." *Id.*

"Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation. Malice in this sense is more akin to negligence with respect to the truth than to spite or improper motive." *Dye v. IASIS Glenwood Reg'l Med. Ctr. LP,* No. CV 18-0981, 2018 WL 5660319, at *3 (W.D. La. Oct. 9, 2018) (quoting *Costello v. Hardy*, 2003-1146 (La. 1/21/04), 864 So. 2d 129, 143).

The Court find that the Amended Complaint fails to establish the first element of Plaintiffs' claims of defamation—that defamatory statements were made. Furthermore,

even if a defamatory statement was made, and the Court presumes that Plaintiffs met their burden of proving publication of words that are defamatory per se, Defendant has met its burden of rebuttal as to malice and/or falsity. One cannot make statements with malice when those statements are true. It is undisputed that Plaintiffs and Holley were all reprimanded for sleeping on the job, misconduct that violates company policy; for purposes of Plaintiffs' claims for defamation, it is of no moment that Holley's reprimand was less severe than the reprimand that Holley received.

## CONCLUSION

For the reasons explained herein, and considering the factual allegations in the Amended Complaint as true, the Court finds that Plaintiffs, Ortego, Huber, and King have failed to establish the elements of their claims of retaliation and defamation. The Court will grant Defendant's Rule 12(b)(6) Motion to Dismiss (Doc. 44) and dismiss these consolidated actions with prejudice.

**THUS DONE AND SIGNED** in chambers on this 18th day of September, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE